UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MICHAEL E.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:25-CV-321-ACL |
| | ) |
| FRANK BISIGNANO, | ) |
| Commissioner of Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

# **MEMORANDUM**

Plaintiff Michael E. brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.

An Administrative Law Judge ("ALJ") found that Plaintiff was not disabled because he was capable of performing work existing in significant numbers in the national economy. This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

---

[1] On May 1, 2023, the Committee on Court Administration and Case Management of the Judicial Conference of the United States issued a memorandum recommending that courts adopt a local practice of using only the first name and last initial of any non-government party in Social Security opinions.

## I. Procedural History

Plaintiff filed his application for benefits on August 1, 2022. (Tr. 17, 161-65.) He claimed he became unable to work on January 15, 2022, due to stroke, heart problems, high blood pressure, high cholesterol, sleep apnea, and arthritis in his low back. (Tr. 164, 196.) Plaintiff was 52 years of age on his alleged onset of disability date. (Tr. 26.) His application was denied initially. (Tr. 100-04.) On April 3, 2024, after a hearing, an ALJ found that Plaintiff was not disabled. (Tr. 17-27.) The Appeals Council denied Plaintiff's claim for review. (Tr. 1-3.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Plaintiff argues that the ALJ "failed to develop the record fully and fairly." (Doc. 12 at 6.)

## II. The ALJ's Determination

The ALJ first found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2027. (Tr. 19.) She found that Plaintiff has not engaged in substantial gainful activity since January 15, 2022, his alleged onset date. *Id.* Next, the ALJ concluded that Plaintiff had the following severe impairments: a history of stroke, left knee osteoarthritis, degenerative disc disease, obstructive sleep apnea, obesity, and bilateral thumb carpometacarpal (CMC) arthritis (20 CFR 404.1520(c).). (Tr. 20.) The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. *Id.*

As to Plaintiff's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently balance as defined by the DOT/SCO; occasionally stoop, kneel, crouch, and crawl; frequently reach overhead with the left upper extremity; frequently handle and finger with the bilateral hands; must avoid extreme cold, extreme heat, and vibration; and must avoid exposure to concentrated odors, fumes, gases, dusts, and poor ventilation.

(Tr. 21-22.)

The ALJ found that Plaintiff was unable to perform any past relevant work, but was capable of performing work existing in significant numbers in the national economy, such as cleaner, hand packer, and production worker. (Tr. 27.) She concluded that Plaintiff was, therefore, not under a disability from his alleged onset date through the date of the decision. *Id.*

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits protectively filed on August 1, 2022, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.

*Id.*

### III.   Applicable Law

**III.A.  Standard of Review**

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S.

Page **3** of **16**

389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992)

(internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).

**III.B.  Determination of Disability**

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, reaching out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on

his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then

the claimant is not disabled.  *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his age, education, and work experience.  *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n. 5 (8th Cir. 2000).  The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.  *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled.  If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.  20 C.F.R. § 416.920(a)(4)(v).  At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant.  *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### IV.  Discussion

In his single claim, Plaintiff argues that the ALJ failed to develop the record fully and fairly.  Specifically, he contends that the ALJ failed to obtain an updated medical opinion to "translate new diagnoses into functional limitations."  (Doc. 12 at 1.)

The new diagnoses Plaintiff references—osteoarthritis of the left shoulder and hands—are based on a series of x-rays Plaintiff underwent on July 15, 2023.[2]  The x-rays of

---

[2] Although the ALJ found Plaintiff had several severe impairments, Plaintiff's argument is

Page **8** of **16**

Plaintiff's left shoulder revealed moderate osteoarthritis of the glenohumeral joint and AC joint. (Tr. 724.)  X-rays of the left hand revealed moderate osteoarthritis of the first carpometacarpal joint (base of the thumb) and small erosion in the head of the middle phalanx of the middle finger; and x-rays of the right hand revealed mild-to-moderate osteoarthritis of the first carpometacarpal joint. (Tr. 713-14.)

On June 13, 2023—approximately one month prior to the x-rays—state agency medical consultant Jacinto DeBorja, M.D., conducted a quality review of the opinions from prior medical consultants. (Tr. 41-42.)  Dr. DeBorja indicated that he agreed with the prior opinions that Plaintiff could lift or carry 20 pounds occasionally and 10 pounds frequently, stand or walk a total of six hours in an eight-hour workday, and sit six hours in an eight-hour workday, consistent with the performance of light work. (Tr. 41.)  Dr. DeBorja and the prior consultants also found Plaintiff had some postural and environmental limitations, but no manipulative limitations. (Tr. 41-42.)

Plaintiff argues that the state agency consultants did not consider the new impairments diagnosed by the July 2023 x-rays, namely moderate osteoarthritis in the left shoulder and hands. Plaintiff contends that the ALJ was required to obtain new medical evidence evaluating how these impairments affect Plaintiff's RFC, and her failure to do so results in a physical RFC that is not supported by substantial evidence.

RFC is the most a claimant can do in a work setting despite that claimant's physical or mental limitations. *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (citation

---

restricted to her osteoarthritis of the left shoulder and hands. As such, the undersigned's discussion of the medical evidence will be limited to those impairments.

omitted); 20 C.F.R. § 404.1545(a)(1).   The ALJ determines a claimant's RFC "based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of [his or her] limitations." *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) (quoting *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015)); 20 C.F.R. § 404.1545(a)(1).

Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, "a claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001) (quoting *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000)).   "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (quoting *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007)).   "An administrative law judge may not draw upon his own inferences from medical reports." *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000).

The ALJ "has a duty to fully and fairly develop the evidentiary record." *Byes v. Astrue*, 687 F.3d 913, 915-16 (8th Cir. 2012).   In some cases, the duty to develop the record requires the ALJ to obtain medical evidence, such as a consultative examination of the claimant, before rendering a decision.   See 20 C.F.R. § 404.1519a(b).   "The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011).   "[I]t is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed

decision." *Freeman v. Apfel*, 208 F.3d 687, 692 (8th Cir. 2000) (quoting *Reeves v. Heckler*, 734 F.2d 519, 522 n. 1 (11th Cir.1984)).

Here, the ALJ properly considered Plaintiff's left shoulder and hand osteoarthritis when determining his RFC.   Although the ALJ did not include these diagnoses as severe impairments, she specifically set out the July 2023 x-ray findings confirming the diagnoses. (Tr. 23.)   The ALJ discussed the findings of Rahcel Dibooglu, FNP-C, who examined Plaintiff on November 29, 2022, at the request of the Commissioner.   (Tr. 547-54.) Plaintiff complained of pain from arthritis in his lower back, hips, neck, knees, and hands that began several years prior.   (Tr. 548.)   He reported that he had dislocated his left shoulder twice, and experienced residual symptoms of increased pain and weakness and numbness/tingling in the hands up to the elbows.   *Id.*   On examination, Plaintiff ambulated without an assistive device, with an antalgic gait and uneven stride.   (Tr. 549.)   The strength in his biceps and triceps against resistance was "mildly weak" on the left at 4/5, due to left shoulder pain and weakness.   (Tr. 550.)   Ms. Dibooglu noted tenderness of the left shoulder, with crepitus, pain, and stiffness palpated with range of motion on the left.   *Id.* Plaintiff's shoulder range of motion was normal bilaterally.   *Id.*   Plaintiff's hand examination revealed no redness, edema, warmth, tenderness, or deformities of the bilateral digits and hands.   *Id.*   He was able to make a normal closed fist and fully extend his fingers bilaterally and oppose all digits bilaterally.   *Id.*   Plaintiff's grip strength was normal, his fine and gross motor movements were fully intact bilaterally, and range of motion of the hands was normal bilaterally   *Id.*   Ms. Dibooglu diagnosed Plaintiff with polyarthritis.   (Tr. 551.)

The ALJ discussed the opinions of the medical consultants, and found that the opinions were not "entirely persuasive," because they were "inconsistent with the record as a whole which merits the additional limitations of only frequently reaching overhead with the left upper extremity and only frequently handling and fingering with the bilateral hands due to the claimant's left shoulder residuals and pain and bilateral hand osteoarthritis and pain." (Tr. 24-25.)

The ALJ concluded that Plaintiff was capable of performing a range of light work despite his combination of impairments, including his osteoarthritis with examinations on occasion showing decreased left upper extremity strength at 4/5.  (Tr. 25.)   In support of this finding, the ALJ stated that examinations generally revealed an unassisted gait, normal sensation, normal range of motion, and normal muscle strength.  *Id.*  In consideration of Plaintiff's left shoulder and bilateral hand pain, the ALJ limited him to frequent reaching overhead with the left upper extremity and frequent handling and fingering with the bilateral hands.  *Id.*

Plaintiff's assertion that the ALJ drew impermissible inferences instead of obtaining a medical opinion fails, as there is no requirement that the RFC finding be supported by a specific medical opinion, and the examination findings considered by the ALJ speak directly to Plaintiff's ability to function in the workplace.  *See Hensley v. Colvin*, 829 F.3d 926, 934 (8th Cir. 2016) (finding medical evidence, including disability exam and treatment records, evidenced Plaintiff's ability to function in the workplace); *Hurst v. Kijakazi*, No. 4:20-CV-00080-MTS, 2021 WL 3021424, at *7 (E.D. Mo. July 16, 2021) ("[O]bjective medical

findings and evidence can constitute sufficient medical support for an RFC assessment even in the absence of medical opinion evidence.").

Plaintiff's reliance upon *Noerper v. Saul*, 964 F.3d 738, 745 (8th Cir. 2020), is unavailing. In *Noerper*, the ALJ favored the opinion of the plaintiff's primary care physician over the more detailed opinion of her orthopedist as to her left knee issues, and assessed that the plaintiff could stand or walk for six hours in an eight-hour workday. 964 F.3d at 745-46. The Court noted that the only record coming close to supporting this opinion predated "the majority of the treatment records concerning Noerper's knee conditions." *Id.* at 747. The Eighth Circuit concluded that "the absence of evidence translating the medical evidence and subjective complaints into functional limitations, ***coupled with the failure to address or resolve the differences between the medical opinions of Drs. Wilkerson and Jones*** leaves us unable to determine the permissibility of the Commissioner's RFC determination." *Id.* at 745-46 (emphasis added). The Court noted that it was not suggesting that an ALJ "must in all instances obtain from medical professionals a functional description that wholly connects the dots between the severity of pain and the precise limits on a claimant's functionality." *Id.* at 746.

Here, unlike *Noerper*, the ALJ did not reject a more detailed opinion of a specialist regarding Plaintiff's shoulder or hand impairments. Additionally, the ALJ had sufficient medical evidence before her regarding Plaintiff's left shoulder and hand impairments with which to determine Plaintiff's RFC.

The record reveals that Sarah Rion, FNP, at Healthway Primary Care ordered x-rays of Plaintiff's left shoulder and hands after Plaintiff complained of pain during a June 30,

2023 visit. (Tr. 721.) On July 25, 2023, Plaintiff returned to the clinic with complaints of left shoulder pain due to dislocating his shoulder at the age of 20 and again between the ages of 30 to 36. (Tr. 708.) He described the pain as aching, occurring constantly, and aggravated by lifting, movement, and turning his head. *Id.* On examination, Kati Hinkle, FNP, noted Plaintiff had full flexion and abduction of the left shoulder; no redness, warmth, or swelling; his neurovascular status was intact distally; and tenderness to palpation was noted at the acromioclavicular and sternoclavicular joints. (Tr. 710.) Plaintiff was given a steroid injection in his left shoulder, and was encouraged to exercise the shoulder as much as possible. (Tr. 710, 712.) He saw Ms. Rion on September 25, 2023, for complaints of right hand numbness and left shoulder pain. (Tr. 700.) Plaintiff reported that vibration, such as with mowing the lawn, made his right hand numbness worse. *Id.* He indicated that his left shoulder pain was somewhat improved for the past three weeks. *Id.* Ms. Rion did not note any findings on examination, but referred Plaintiff to an orthopedist for his left shoulder arthritis. (Tr. 705.) Plaintiff saw rheumatologist Romila Aslam, M.D., upon the referral of Ms. Rion on November 13, 2023. (Tr. 761.) Plaintiff reported experiencing joint pain for over ten years in his back, knees, and hands; occasional swelling in his hands; and overall joint pain and stiffness. *Id.* On examination, Plaintiff had 18/18 tender points. (Tr. 763.) Dr. Aslam assessed chronic pain in unspecified joints, with a history and examination consistent with fibromyalgia. (Tr. 764.) Dr. Aslam started Plaintiff on medication for fibromyalgia and ordered additional testing. *Id.*

Although the x-rays showing moderate osteoarthritis in the left shoulder and hands were not performed until July 2023, Plaintiff complained of pain and other symptoms related

to these impairments prior to this time. In fact, Plaintiff reported to providers that he had experienced joint pain in these areas for more than ten years. (Tr. 708, 761.) As discussed above, consultative examiner Ms. Dibooglu noted Plaintiff's complaints of pain and decreased strength in the left shoulder and weakness and numbness/tingling in the hands in November 2022. (Tr. 548.) Ms. Dibooglu found the strength of Plaintiff's biceps and triceps was mildly weak on the left due to his left shoulder pain and weakness, and she noted tenderness and crepitus with range of motion of the left shoulder. (Tr. 550.) Ms. Dibooglu, however, found Plaintiff's shoulder range of motion was normal bilaterally, and his hand examination was normal in all respects. *Id.*

The July 2023 x-rays do not reflect a new condition that was not considered by the ALJ. Instead, the x-rays provided radiographic confirmation of Plaintiff's existing complaints of pain and weakness in these areas for which he received treatment. Ms. Dibooglu's findings on examination are consistent with the subsequent x-ray findings of moderate osteoarthritis. The ALJ considered Plaintiff's complaints of pain and limitations in his left shoulder and hand by addressing those impairments when determining his RFC. Specifically, the ALJ included additional limitations of only frequently reaching overhead with the left upper extremity and only frequently handling and fingering with the bilateral hands.

In sum, the ALJ considered the opinions of the state agency medical consultants, the imaging results, the report of the consultative examiner, and the treatment notes showing essentially normal findings on examination. Accordingly, this is not a case in which a crucial issue was undeveloped and it was not necessary for the ALJ to obtain additional

medical opinions regarding Plaintiff's work-related limitations. Upon review of the record as a whole, the Court finds substantial evidence supports the ALJ's determination that Plaintiff was capable of a limited range of light work.

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

/s/ *Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 19th day of February, 2026.